# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 14-270-7 (RBW) |
| | ) | |
| ANTHONY PRYOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

The defendant, Anthony Pryor, is currently serving a 140-month term of imprisonment that was imposed by this Court following his conviction at the conclusion of a nine-day bench trial for conspiracy to possess with the intent to distribute one hundred grams or more of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(i). See Judgment in a Criminal Case ("Judgment") at 1–2 (Oct. 23, 2017), ECF No. 786. Currently pending before the Court is the defendant's pro se motion seeking to have the Court clarify and reconsider its March 1, 2024 Memorandum Opinion and Order denying his motion to vacate his sentence pursuant to 28 U.S.C. § 2255, and to have the Court grant him relief pursuant to a writ of audita querela. See Motion to Clarify and [Reconsider] [t]he Court's March 1, 2024 Order Regarding Pryor's Section 2255 ("Def.'s Mot.") at 1, ECF No. 1047. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that: (1) it will grant the defendant's motion to the extent that it seeks to clarify the Court's March 1, 2024 Memorandum Opinion and Order; (2) a certificate of appealability is not warranted in this matter; and (3) it will deny the

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Def.'s § 2255 Mot."), ECF No. 881; (2) Pryor's Memorandum of Law in Support of Relief Under Section 2255 of Title 28, United States Code ("Def.'s § 2255 Mem."), ECF No. 882; and (3) the Government's Response to Defendant's Post-Conviction Motion ("Gov't's Opp'n"), ECF No. 985.

defendant's motion to the extent that it seeks relief pursuant to a writ of audita querela under 28 U.S.C. § 1651.

## I.      BACKGROUND

Following a bench trial conducted from January 17, 2017, to January 30, 2017, the defendant was convicted of one count of conspiracy to possess with the intent to distribute one hundred grams or more of heroin, in violation of §§ 846, 841(a)(1), and 841(b)(1)(B)(i).  See Judgment at 1.  Subsequently, the United States Probation Office (the "Probation Office") submitted to the Court its final Presentence Investigation Report, which included a sentencing guidelines calculation pursuant to the United States Sentencing Guidelines (the "Guidelines"). See Presentence Investigation Report ("PSR") ¶ 83, ECF No. 762.  The Probation Office concluded that "the defendant is a Career Offender and his criminal history category must be VI" because he "was at least 18 years old at the time of the instant offense of conviction; the instant offense is a controlled substance offense; and the defendant ha[d] at least two prior felony convictions for [ ] controlled substance offense[s.]"  Id. ¶ 57.  Therefore, although the defendant's offense level would have been 24, absent the career offender enhancement, see id. ¶ 37, the Probation Office calculated the defendant's offense level to be 34, see id. ¶ 38 ("The offense level for a career offender is 34 because the statutory maximum term of imprisonment is 40 years.").  Consequently, the Probation Office calculated the defendant's "guideline imprisonment range [a]s 262 months to 327 months."  Id. ¶ 83.

The Court sentenced the defendant on October 16, 2017.  See Minute ("Min.") Entry (Oct. 17, 2017).  At the sentencing hearing, neither the government nor the defendant objected to the Guidelines calculation in the Presentence Investigation Report, see Transcript of Hearing on Sentencing Before the Honorable Reggie B. Walton (Oct. 16, 2017) ("Sent'g Tr.") at 3:3–10,

2

ECF No. 803, and thus the Court "adopt[ed] the presentence report and the Guidelines [calculation] as accurate[,]" id. at 3:11–12. Following the parties' arguments, the Court concluded that a bottom Guidelines sentence of 262 months of incarceration "would be inappropriately disparate" in this case. Id. at 26:1. Specifically, the Court noted that although some disparity between the defendant's sentence and those of his co-defendants who pleaded guilty was appropriate, sentencing the defendant—a lower-level member of the heroin distribution conspiracy—to a term of 262 months of incarceration would create an unwarranted disparity between his sentence and the 180-month sentence imposed on his co-defendant, Donte Yarbough, who was "one of the kingpins of this [drug distribution] operation . . . ." Id. at 24:20–21. However, the Court concluded that, "what [the defendant] did, with [his] history, deserve[d] that [he] at least do ten years' incarceration for this behavior." Id. at 26:6–9. Accordingly, the Court sentenced the defendant to "a hundred and forty months in prison, concluding that a [downward] departure, based upon [the defendant's] role, which [wa]s significantly less than other[ co-conspirators' roles], and also the need to avoid inappropriate disparity" between the sentences imposed in this case. Id. at 26:10–13.

On August 11, 2020, the defendant filed his pro se motion under 28 U.S.C. § 2255. See Def.'s § 2255 Mot. at 1. In his motion, the defendant argued that his trial counsel was ineffective for two reasons. First, the defendant argued that his trial counsel failed to "conduct research on" and present an argument to the Court that the defendant's conspiracy conviction did not qualify as a "controlled substance offense" under the Guidelines for the purposes of applying the career-offender sentencing enhancement. Def.'s § 2255 Mem. at 6. At bottom, the defendant argued that, despite then-binding Third Circuit precedent holding that "the definition of a controlled substance offense" in the Sentencing Guidelines "include[d] inchoate offenses[,]" United States

v. Hightower, 25 F.3d 182 (3d Cir. 1994), overruled by United States v. Nasir, 17 F. 4th 459 (3d Cir. 2021), his counsel should have nonetheless argued that Hightower was wrongly decided.[2]  The defendant also argued that his trial counsel was ineffective because she failed to bring to the Court's attention three alleged inconsistencies in the testimony of one of the government's witnesses.  Def.'s § 2255 Mem. at 11–12.

In its March 1, 2024 Memorandum Opinion, the Court denied the defendant's motion because (1) "'binding Third Circuit precedent and clear commentary in the sentencing guidelines at the time of [the defendant's] sentencing stated that 21 U.S.C. § 846 is a [controlled substance offense]' and 'counsel cannot be deemed ineffective for failing to raise a [then] meritless claim[,]'" Memorandum Opinion at 12 (Mar. 1, 2024), ECF No. 1045 (citation omitted), and (2) "it [wa]sn't clear that the counsel's failure to point out 'inconsistent statements' caused the [defendant] prejudice[,]" id. at 16 (second and third alteration in original) (internal citations omitted), and even if the Court decided the testimony of one witness was not credible, "the defendant [did] not explain how that finding would have outweighed the otherwise 'overwhelming evidence of [his] guilt[,]'" id. (second alteration in original) (quoting Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999)).

On March 12, 2024, the defendant filed a pro se motion to clarify and reconsider the Court's March 1, 2024 Order denying his motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  See Def.'s Mot. at 1.  In his motion, the defendant (1) explained that he "does not know if he must prepare to file something" based on the Court's reference to holding in abeyance one

---

[2] As discussed below, in Nasir, the Third Circuit overruled its prior precedent in Hightower, and held that "inchoate crimes are not included in the definition of 'controlled substance offenses' given in [§] 4B1.2(b) of the [S]entencing [G]uidelines" in determining whether an individual qualifies as a career offender under the Guidelines.  17 F.4th at 472.

of his claims, id.; (2) requested that the Court "reconsider its [28 U.S.C. § 2255] decision," id. at 2; and (3) "ask[ed] this Court to review" and grant relief "in the form of 28 U.S.C. § 1651, an audita querela[,]" id. [3]

## II.      ANALYSIS

The Court will first address the defendant's request that the Court clarify and reconsider its prior Memorandum Opinion and Order denying his motion to vacate.  Because the Court ultimately concludes that reconsideration of its denial of his motion is not warranted, the Court will then address his request for alternative relief pursuant to a writ of audita querela.

## A.      The Defendant's Motion to Clarify the Court's Prior Memorandum Opinion and Order

The Court will first clarify its prior Memorandum Opinion and Order, concluding that it is appropriate to do so under the circumstances.  In its Memorandum Opinion, the Court stated that it would "hold the defendant's motion in abeyance to the extent that it argues that his trial counsel was ineffective for failing to identify 'inconsistent statements' in the testimony of Corey Thompson," Memorandum Opinion at 1 (Mar. 1, 2024), but in fact concluded that the defendant had failed to show that this component of his claim raised an ineffective assistance of counsel claim, id. at 16; see Order at 1 (Mar. 1, 2024) (denying the defendant's § 2255 in its entirety).  Thus, this Order serves to clarify that, consistent with the analysis and conclusions contained in the Court's prior Memorandum Opinion and the accompanying Order, the Court denied in full

---

[3] On May 24, 2024, the Court denied the defendant's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) because although § 3582(c)(2) permits modification of a term of imprisonment "based on a sentencing range that has subsequently been lowered by the [United States] Sentencing Commission[,]" 18 U.S.C. § 3582(c)(2), the reduction did not apply to the defendant because his Guidelines Range at sentencing was based on his designation as a career offender and not on the computation of his criminal history points.  See Min. Entry (May 24, 2024); Order at 1 (May 28, 2024), ECF No. 1057.

the defendant's § 2255 motion and mistakenly represented that it was holding in abeyance a ruling on part of that motion.

**B.      The Defendant's Motion to Alter or Amend the Court's Judgment**

The Court will next address the defendant's request to "reconsider its [§ 2255] decision[.]" Def.'s Mot. at 2. Although the defendant frames his motion in part as a motion for reconsideration, he does not identify the specific rule under which he brings his motion. See generally Def.'s Mot. Because the defendant timely filed his motion within the period set forth in Federal Rule of Civil Procedure 59, the Court will construe the motion in part as a request under this Rule for the Court to alter or amend its Memorandum Opinion and Order. See, e.g., Swint v. United States, No. 24-2222, 2025 WL 88836, at *3 (3d Cir. Jan. 14, 2025) (noting that a motion for reconsideration filed within the timeframe permitted by Rule 59 "should have been construed as a motion under Rule 59(e)," rather than under Rule 60(b)).

"Rule 59(e) permits the filing of a motion to alter or amend a judgment." United States v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003). And, "a timely Rule 59(e) motion suspends the finality of the judgment by tolling the time for appeal[,]" Blystone v. Horn, 664 F.3d 397, 414 (3d Cir. 2011) (citing Howard v. United States, 533 F.3d 472, 475 (6th Cir. 2008)), because Rule 59 "makes explicit that the district court may continue to exercise the inherent power that it has to rectify its own mistakes prior to the entry of judgment for a brief period of time immediately after judgment is entered[,]" id. (citing White v. N.H. Dep't of Emp. Sec., 4555 U.S. 445 (1982)).

However, the "scope of a motion for reconsideration . . . is extremely limited." Id. at 415. "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear

error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010).  However, "[s]uch motions are not to be used as an opportunity to relitigate the case[,]" Blystone, 664 F.3d at 415 (citing Howard Hess Dental Labs., Inc., v. Dentsply Int'l Inc., 602 F.3d 237, 251 (3d Cir. 2010)), based on a mere "disagreement with the Court's decision[,]" Database Am., Inc., v. Bellsouth Advert. & Publ'g Corp., 825 F. Supp. 1216, 1220 (D.N.J. 1993).

Here, the defendant's motion, though styled as one for reconsideration, focuses almost entirely on the defendant's request for relief pursuant to the All Writs Act, which the Court discusses in detail below.  To the extent that the Court can construe the defendant's motion as seeking relief pursuant to Rule 59(e), the defendant raises the same arguments based on the Third Circuit's decision in United States v. Nasir, 17 F. 4th 459 (3d Cir. 2021), which the Court previously denied, see Memorandum Opinion at 12–15 (Mar. 1, 2024).  Thus, because the defendant's motion—even liberally construed in light of his pro se status—does not raise any of the proper grounds for relief pursuant to Rule 59(e), see Lazaridis, 591 F.3d at 669, the Court cannot conclude that there is a basis for altering or amending its Memorandum Opinion and Order.

## C.    Whether the Issuance of a Certificate of Appealability Is Warranted

Although the defendant has not requested a certificate of appealability, the Court will nonetheless determine whether the issuance of such a certificate is appropriate here, having declined to make that determination in its prior Memorandum Opinion and Order.  For the following reasons, the Court concludes that it will not issue a certificate of appealability.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the

court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B); see also Gonzalez v. Thaler, 565 U.S. 134, 137 (2012) ("[A] habeas petitioner must obtain a certificate of appealability (['][COA['])] to appeal a district court's final order in a habeas proceeding."). The Supreme Court has noted with approval that "[t]he courts of appeals uniformly interpret 'circuit justice or judge' [in § 2253(c)(1)] to encompass district judges." Gonzalez, 565 U.S. at 143 n.5. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, the defendant must "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotation marks omitted) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "Where . . . [the C]ourt has rejected the [defendant's] constitutional claims on the merits," the defendant "must demonstrate that reasonable jurists would find . . . the [ ] [C]ourt's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

The Court need not reiterate its conclusions in full in denying the defendant's § 2255 motion, but will address each issue briefly. First, in regards to the defendant's ineffective assistance of counsel claim predicated upon counsel's failure to raise the alleged inapplicability of the career offender provision to his conspiracy conviction, the Court explained in its prior Memorandum Opinion that, at the time the defendant was sentenced, binding Third Circuit precedent from Hightower would have compelled the Court to summarily reject that argument. Memorandum Opinion at 13 (Mar. 1, 2024). Moreover, the Court emphasized that "any argument that Hightower was wrongly decided would have been against the weight of Circuit

8

authority from across the country." Id. (citations omitted). Thus, for the same reasons, the Court now concludes that reasonable jurists would not debate that defense counsel's performance was reasonable, see Slack, 529 U.S. at 484, because lawyers are not required to predict changes in case law or argue meritless claims at the time of their representation, especially because, at the time of sentencing, there was no "contrary legal authority, both binding and persuasive" that would have provided his counsel a basis to raise the position he contends should have been raised, Memorandum Opinion at 14 (Mar. 1, 2024).[4]

Additionally, in regards to the defendant's ineffective assistance of counsel claim predicated upon counsel's failure to identify three inconsistent statements by one witness, the Court previously explained that even if the defendant's counsel had identified the inconsistent statements, "the defendant d[id] not explain how that finding would have outweighed the otherwise 'overwhelming evidence of [his] guilt[.]'" Id. at 16 (second and third alterations in original) (quoting Buehl, 166 F.3d at 172). Given that the government presented the testimony of twenty-seven witnesses and introduced twenty-one pages of documents, see id., the defendant fails to demonstrate how three inconsistent statements would outweigh the overwhelming evidence of his guilt from the testimony of other witnesses and extensive documentation. Thus, for the previously explained reasons, the Court now concludes that reasonable jurists would not debate the Court's assessment that the defendant was not prejudiced by his counsel's failure to present during his trial three inconsistent statements of one witness. See Slack, 529 U.S. at 484.

Accordingly, the Court declines to issue a certificate of appealability in this case.

---

[4] Nor would reasonable jurists debate the Court's prior conclusion that, "[t]o the extent that the defendant argues that his [sentence] was improper, . . . 'an incorrect career-offender enhancement under the advisory guidelines is not cognizable under § 2255 because it is not a fundamental defect that inherently results in a complete miscarriage of justice.'" Id. at 15 n.6 (quoting United States v. Folk, 954 F.3d 597, 604 (3d Cir. 2020)).

**D.      The Defendant's Request for Relief Pursuant to a Writ of <u>Audita Querela</u>**

Finally, the Court considers whether the defendant is entitled to relief pursuant to the All Writs Act in the form of a writ of <u>audita querela</u>.  "The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute."  <u>Massey v. United States</u>, 581 F.3d 172, 174 (3d Cir. 2009) (per curiam) (quoting <u>Pa. Bureau of Corr. v. U.S. Marshals Serv.</u>, 474 U.S. 34, 43 (1985)).  One such writ is the common law writ of <u>audita querela</u>, which "permitted a defendant to obtain relief against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment."  <u>Id.</u> (citation and internal quotation marks omitted).  However, "relief via a petition for a writ of <u>audita querela</u> is not available where a specific statute addresses the issue at hand."  <u>United States v. Fontanez</u>, 462 F. App'x 147, 148 (3d Cir. 2012) (per curiam) (citing <u>Massey</u>, 581 F.3d at 174).

"While the writ of <u>audita querela</u> has been abolished in civil cases, the writ is available in criminal cases to the extent that it fills gaps in the current system of post-conviction relief." <u>Massey</u>, 581 F.3d at 174 (citations omitted); <u>see also</u> <u>United States v. Potts</u>, 765 F. App'x 638, 640 (3d Cir. 2019) (noting that the Third Circuit "ha[s] yet to find a gap in the federal post-conviction framework that needed to be filled with a writ of <u>audita querela</u>").[5]  "Such a gap must be systemic and not merely reflect a defendant's inability to use available remedies."  <u>United States v. Georgiou</u>, 800 F. App'x 136, 139 (3d Cir. 2020) (citing <u>Cradle v. United States ex rel. Miner</u>, 290 F.3d 536, 538 (3d Cir. 2002)) (noting that "[i]t is the inefficacy of the remedy, not the personal inability to use it, that is determinative").  In other words, a defendant "may not seek relief via a petition for a writ of <u>audita querela</u> [if] his claim is cognizable under § 2255[,]"

---

[5] "In the rare case that § 2255 is 'inadequate or ineffective' because some limitation of scope or procedure would prevent a § 2255 proceeding from affording a full hearing and adjudication of a claim, a federal prisoner may seek relief via 28 U.S.C. § 2241."  <u>Royal v. United States</u>, 357 F. App'x 402, 403 n.3 (3d Cir. 2009) (citations omitted).

10

Massey, 581 F.3d at 174, and is not entitled to the writ because he cannot meet the AEDPA's gatekeeping requirements, see id.; see also United States v. Paster, 190 F. App'x 138, 139 (3d Cir. 2006) (holding "that [a] prisoner may not circumvent valid congressional limitations on collateral attacks by asserting that those very limitations create a gap in the post-conviction remedies that must be filled by the common law writs such as audita querela").

And, as the Third Circuit has noted, although there is some legal authority in support of granting a writ of audita querela where a change in law "does not apply retroactively on collateral review, the retroactivity of the rule relied upon by a prisoner is one of § 2255's valid gatekeeping requirements." Massey, 581 F.3d at 174 n.2; accord United States v. Ayala, 894 F.2d 425, 429 n.8 (D.C. Cir. 1990) (noting that while "not all postjudgment changes in law may be raised in a [§] 2255 proceeding[,]" the District of Columbia Circuit "ha[d] little doubt that a defendant challenging his conviction collaterally may not style his motion as a petition for a writ of audita querela simply to evade the Supreme Court's painstakingly formulated 'retroactivity' rules") (citing United States v. Kimberlin, 675 F.2d 866, 869 (7th Cir. 1982)).

Here, the defendant argues that he is entitled to a writ of audita querela because, after the Third Circuit's decision in Nasir, "he would not have been designated a career offender[,]" Def.'s Mot. at 3, and that he could not bring a claim based on Nasir in his prior § 2255 motion, see id. at 2–3 (citing United States v. Folk, 954 F.3d 597, 606 (3d Cir. 2020)) (holding that "an incorrect career-offender designation is not the type of defect that supports undermining finality[]" and therefore does not provide a basis for a § 2255 motion). As support for his position, the defendant cites United States v. Kenney, in which a judge of the Middle District of Pennsylvania granted the defendant in that case relief via a writ of audita querela after the Third Circuit "directly abrogated [the defendant's] case, yet [ ] denied him both the opportunity to

11

vacate the mandate and to file a second or successive habeas petition[,]" despite the application of a retroactive change in law.  No. 99-cr-0280, 2017 WL 621238, at *4 (M.D. Pa. Feb. 15, 2017)).

For the following reasons, the Court concludes that the defendant has failed to establish that he is entitled to a writ of audita querela.  First, as the Court has previously noted, when the defendant was sentenced, Hightower was binding Third Circuit precedent, see Memorandum Opinion at 12–13 (Mar. 1, 2024), and the Third Circuit has noted under similar circumstances that it has "not held that Nasir applies retroactively to cases on collateral review[,]" United States v. Blackwell, No. 24-1840, 2024 WL 4457453, at 2 n.5 (3d Cir. Oct. 10, 2024) (affirming the denial of a writ of audita querela on other grounds); accord United States v. Rodriguez, No. 23-1646, 2023 WL 4077341, at *2 (3d Cir. June 20, 2023) (denying a motion for compassionate release based on Nasir because "changes in sentencing law, whether by statute or opinion, are presumptively non-retroactive, so not benefiting from the non-retroactive application of Nasir" did not constitute an "extraordinary or compelling" circumstance) (citations omitted).  Thus, the defendant's case is distinguishable from Kenney, where the defendant was denied an opportunity to vacate the mandate or file a second or successive habeas petition based on the application of a retroactive change in the law regarding the definition of a "crime of violence" for the purposes of determining whether a defendant is a career offender.  See 2017 WL 621238, at *4.  And, because "the retroactivity of the rule relied upon by [the defendant] is one of § 2255's valid gatekeeping requirements[,]" Massey, 581 F.3d at 174 n.2, he may not circumvent that legitimate

12

limitation by styling his motion as one for a writ of <u>audita querela</u>.[6]   Therefore, the Court must

deny the defendant's motion to the extent that it seeks relief pursuant to a writ of <u>audita querela</u>.[7]

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part

the defendant's motion and decline to issue a certificate of appealability in this matter.

**SO ORDERED** this 23rd day of July, 2026.[8]

REGGIE B. WALTON
United States District Judge

---

[6] In any event, "[e]ffective November 1, 2023, responding to th[e] circuit conflict, the Sentencing Commission amended § 4B1.2 by striking that portion of Application Note 1 and adding § 4B1.2(d) to the Guideline itself, which incorporates verbatim the deleted language in Application Note 1 that had included inchoate offenses." <u>United States v. Cupples</u>, 105 F.4th 1096, 1097 n.2 (8th Cir. 2024) (citing USSG Amendment 822, 2023 Guidelines Manual, Suppl. to App. C at 245–47).  So, "if [the defendant] were sentenced today (or any time since November 2023), his conspiracy offense would indeed qualify as a 'controlled substance offense' for career-offender purposes." <u>Blackwell</u>, 2024 WL 4457453, at *2 n.5 (citing, <u>inter alia</u>, USSG § 4B1.2(d)).

Although the defendant argues that reliance on the November 1, 2023 amendment "would not ring well in light of the Supreme Court decision[] in <u>Peug[h] v. United States</u>, where the Court found that the <u>ex post facto</u> clause prevent[ed] the use of a g[u]ideline that harm[ed] a defendant that was not in place when the defendant was convicted[,]" Def.'s Mot. at 3 (citing 569 U.S. 530 (2013)), the defendant's argument is misplaced.  When the defendant was sentenced, the Court reviewed the Sentencing Guidelines range that was applicable at that time, and in fact concluded that a significant downward departure from the then-applicable Guidelines range was appropriate under the circumstances.  <u>See</u> Sent'g Tr. at 24:8–26:15.  And, to the extent that the defendant effectively seeks to be resentenced, he would be resentenced under the current Sentencing Guidelines, and thus, the career offender designation would still apply.  <u>See</u> USSG § 4B1.2(d).

[7] No certificate of appealability is required before a defendant may appeal the denial of a motion for the issuance of a writ of <u>audita querela</u>.  <u>See</u> <u>Potts</u>, 765 F. App'x at 640.

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.